# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATALIE NORCROSS, on behalf of herself and all others similarly situated, | Civil Action No.: 1:23-cv-11153-JPO |
| Plaintiff, | Hon. J. Paul Oetken |
| v. | |
| TISHMAN SPEYER PROPERTIES, L.P., ROCK RINK L.L.C., AND RCPI LANDMARK PROPERTIES, LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: August 2, 2024

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*Pro Hac Vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 2

    A.    New York Arts & Cultural Affairs Law § 25.07(4) ............................... 2

    B.    Plaintiff's Allegations ............................................................. 2

    C.    The Settlement Negotiations ..................................................... 3

TERMS OF THE SETTLEMENT ............................................................... 4

    A.    Class Definition ................................................................... 4

    B.    Monetary Relief ................................................................... 4

    C.    Prospective Relief ................................................................ 5

    D.    Release ............................................................................ 5

    E.    Notice And Administration Expenses ........................................... 5

    F.    Service Award And Attorneys' Fees, Costs, And Expenses ................... 5

ARGUMENT ................................................................................... 6

I.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................. 6

    A.    The *Grinnell* Factors ............................................................ 8

        1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) .......................................................8

        2.    The Reaction Of The Class (*Grinnell* Factor 2) ..........................9

        3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ...........................10

        4.    Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5) .......................................................11

        5.    Defendants' Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ................................................................12

        6.    The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9) ................................................................12

    B.    The Rule 23(e)(2) Factors .......................................................14

        1.    The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A) ...........................14

        2.    The Settlement Was Negotiated At Arm's Length ....................14

3.     The Settlement Provides Adequate Relief To The Class............................15

4.     The Settlement Treats All Class Members Equally...................................16

II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ......................................... 17

III.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 19

CONCLUSION..................................................................................................................... 20

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d. Cir. Mar. 13, 1974)............................................................................Passim

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..................................................................................... 17

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................... 6, 12, 13, 17

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
925 F.3d 63 (2d Cir. 2019) ........................................................................... 7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)................................................. 14

*Hanlon v. Chrsler Corp.*,
150 F.3d 1011 (9th Cir. June 9, 1998)........................................................ 10

*Hayes v. Harmony Gold Min. Co.*,
2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)................................................ 16

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
271 F. App'x 41 (2d Cir. 2008) .................................................................. 18

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................... 8, 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007)................................................ 7

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................. 14, 15, 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................................. 17

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................ 10

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)....................................................... 14, 15, 16, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ............................................................. 7

*In re Vitamin C Antitrust Litig*,
  2012 WL 5289514 ........................................................................................... 9, 11

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ............................................................................... 17

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ........................................................................... 7

*Khait v. Whirlpool Corp.*,
  2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......................................................... 16

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. 2012) ..................................................................... 10

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 17

*Moses v. The New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ........................................................................ 6, 7, 17

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ............................................................................... 13

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ......................................................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981) ........................................................................ 8

*Tiro v. Public House Invs., LLC*,
  2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) .......................................................... 6

*Torres v. Gristede's Oper. Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ......................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d. Cir. Jan. 4, 2005) ................................................................... 6, 18

*Weigner v. City of N.Y.*,
  852 F.2d 646 (2d Cir. 1988) ............................................................................... 18

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................................................... 11, 16

**STATUTES**

New York Arts & Cultural Affairs Law .......................................................................... 1, 2, 3, 5

New York General Business Law § 399-zzz .............................................................................. 17

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 9

Fed. R. Civ. P. 23 ..............................................................................................................Passim

Fed. R. Civ. P. 26 ...................................................................................................................... 3

<u>**INTRODUCTION**</u>

On May 17, 2024, this Court preliminarily approved the class action settlement between Plaintiff Natalie Norcross ("Plaintiff") and Defendants Tishman Speyer Properties, L.P., Rock Rink L.L.C., and RCPI Landmark Properties, LLC ("Defendants") and directed that notice be sent to the Settlement Class.  *See* ECF No. 24.  The settlement administrator has implemented the Court-approved notice plan and direct notice has reached over 96.27% of the certified Settlement Class.[1]  The reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 176,062 Settlement Class Members, <u>**zero**</u> objected and only seven requested to be excluded.[2]  The Settlement is an excellent result for the Class and the Court should grant final approval.

The strength of the Settlement speaks for itself.  After extensive negotiations, the parties reached a Settlement that creates a non-reversionary Settlement Fund of $1.1 million, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved service award to Plaintiff, and attorneys' fees, costs, and expenses to Class Counsel.  Notably, Defendant collected just under a million dollars in allegedly unlawful fees, thus meaning the Settlement Fund *exceeds* the potentially available actual damages.  And, just as important, the Settlement also provides meaningful prospective relief aimed at the challenged conduct, as Defendants represent that they no longer charge processing fees for electronic tickets to their Places of Entertainment and as part of the Settlement agree not to reinstate the processing fee that was the subject of this litigation unless: (i) they clearly and conspicuously disclose the

---

[1] Capitalized terms used in this memorandum are defined in the Class Action Settlement Agreement (the "Settlement"), attached to the Declaration of Philip L. Fraietta In Support of Plaintiff's Unopposed Motion for Final Approval ("Fraietta Decl.") as Exhibit 1.
[2] The deadline for Settlement Class Members to object or request exclusion was July 22, 2024. *See* ECF No. 24 ¶¶ 16, 21.

total cost of the tickets, inclusive of all processing fees, prior to the ticket being selected for purchase; or (ii) New York Arts & Cultural Affairs Law ("ACAL") § 25.07(4) is amended, repealed, or otherwise invalidated.

Given the relief provided by the Settlement, the Court should not hesitate to grant final approval.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### A.    **New York Arts & Cultural Affairs Law § 25.07(4)**

Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that:

> Every operator or operator's agent of a place of entertainment … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchase. Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase. … The price of the ticket shall not increase during the purchase process.

*Id.* (emphasis added).

The ACAL provides a private right of action to "any person who has been injured by reason of violation of" its provisions.  ACAL § 25.33.

### B.    **Plaintiff's Allegations**

Defendants own and operate Rockefeller Center and the Places of Entertainment therein. *See* Complaint (ECF No. 1) ("Compl.") ¶¶ 8-10.  Plaintiff alleges that when consumers purchase admission tickets to the Places of Entertainment on Defendant's website, they are "quoted a fee-less price, only to be ambushed by a $5.00 'processing fee' at checkout after click through the various screens required to make a purchase."  *Id.* ¶ 1; *see also id.* ¶¶ 11-19 and Figures 1-7. Plaintiff alleges that this conduct violates ACAL § 25.07(4) because Defendants failed to

"disclose the 'total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket' after a ticket is selected" and because Defendants "increase[ed] the price of their tickets during the purchase process." *Id.* ¶¶ 31-32. "On October 10, 2023, Plaintiff purchased tickets on Defendants' website and was forced to pay Defendants' processing fee. Plaintiff was harmed by paying this processing fee, even though that total cost was not disclosed to Plaintiff at the beginning of the purchase process, and therefore, is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4)." *Id.* ¶ 34.

      **C.**    **The Settlement Negotiations**

      Before Defendants formally responded to the Complaint, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *See* Fraietta Decl. ¶ 5. As part of the settlement negotiations, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, specifically the amount of processing fees Defendants collected during the relevant time period. *Id.* ¶ 6. Given that the information exchanged would have been, in large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 7. After Class Counsel received the information, counsel for the Parties had numerous conferences, and, on April 12, 2024, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet. *Id.* ¶ 8. The next business day, the Parties filed a joint letter to inform the Court that the Parties had reached agreement on all material terms. *Id.* ¶ 9 (citing ECF No. 16). In the weeks following, the Parties engaged a Settlement Administrator and, in consultation with the Settlement Administrator on matters of notice and claims administration, negotiated the full-form Settlement Agreement. *Id.* ¶ 10 and

Ex. 1.  The Court preliminarily approved the Settlement on May 17, 2024.  *Id.* ¶ 14 (citing ECF No. 24).

<u>**TERMS OF THE SETTLEMENT**</u>

The key terms of the Settlement are briefly summarized as follows:

**A.      Class Definition**

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll individuals who: (i) purchased electronic tickets to Defendants' Top of the Rink, the Rink, and/or Rockefeller Center Tours from Defendants' website, https://www.rockefellercenter.com/, from August 29, 2022 through and including January 31, 2024; and (ii) paid a processing fee in connection with such purchase.

Settlement ¶ 1.38.

**B.      Monetary Relief**

The Settlement consists of a non-reversionary, **all-cash** "common fund" in the amount of $1,100,000, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved service award to Plaintiff, and attorneys' fees, costs, and expenses to proposed Class Counsel to the extent awarded by the Court.  *Id*. ¶¶ 1.37, 1.40. Each Settlement Class Member who submits a simple Claim Form will receive a *pro rata* cash payment as a percentage of the total amount of processing fees he or she paid to Defendants during the class period.  *Id.* ¶ 2.1(b).[3]

---

[3] Proposed Class Counsel, in conjunction with Defendants and the Settlement Administrator, investigated the feasibility of automatic payments but due to the wide array of countries in which Settlement Class Members reside, and the differing regulations/availability of electronic payments in those countries, determined that automatic payments were not feasible in this matter.  Fraietta Decl. ¶ 10.

C.    **Prospective Relief**

In connection with the Settlement, Defendants represent that they no longer charge processing fees for electronic tickets to their Places of Entertainment and as part of the Settlement agree not to reinstate the processing fee that was the subject of this litigation unless: (i) they clearly and conspicuously disclose the total cost of the tickets, inclusive of all processing fees, prior to the ticket being selected for purchase; or (ii) ACAL § 25.07(4) is amended, repealed, or otherwise invalidated.   *Id.* ¶ 2.2.

D.    **Release**

In exchange for the relief described above, Defendants and each of the "Released Parties" as defined at ¶ 1.32 of the Settlement will receive a full release of all claims arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged collection of processing fees in connection with electronic ticket sales from August 29, 2022 through and including January 31, 2024.  *See id.* ¶¶ 1.31, 3.1-3.2 for full release language.

E.    **Notice And Administration Expenses**

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all other costs of administration of the Settlement.  *See id.* ¶¶ 1.35, 1.40.

F.    **Service Award And Attorneys' Fees, Costs, And Expenses**

In recognition of her efforts on behalf of the Settlement Class, the Parties have agreed that Plaintiff may receive, subject to Court approval, a service award of up to $5,000 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action.  *Id.* ¶ 8.3.  Defendants have also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to

reimburse costs and expenses in this Action, in an amount to be approved by the Court. *Id.* ¶ 8.1. Class Counsel has agreed—with no consideration from Defendant—to limit its petition to the Court for attorneys' fees, unreimbursed costs, and expenses to one-third of the Settlement Fund. *Id.* Defendants may challenge the amounts requested. Should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund. *See id.* ¶ 8.1. On July 8, 2024, Plaintiff and Class Counsel separately moved for these awards. *See* ECF No. 25. That motion is unopposed.

## ARGUMENT

## I. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 at 116 (2d. Cir. Jan. 4, 2005). Courts must also "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. The New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2)(C)-(D)). When evaluating the relief provided, "courts must 'tak[e] into account,' among other considerations, 'the terms of any proposed award of attorney's fees,'"

such that "'both the terms of the settlement and any fee award encompassed in a settlement agreement [is reviewed]' in tandem." *Id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)); *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 72 (2d Cir. 2019)).

Courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117. "Absent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell* factors, and the Rule 23(e)(2) factors do not displace the *Grinnell* factors. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019)

("There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other.").

A.      **The *Grinnell* Factors**

1.      **Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts consistently have held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

As noted, the Parties engaged in informal discovery prior to reaching the Settlement, including on issues such as the size and scope of the putative class, specifically the amount of processing fees Defendants collected during the relevant time period. Had no settlement been reached, the next steps in the litigation would have been for Defendants to respond to Plaintiff's complaint, which would most likely have taken the form of a motion to dismiss, and resolution of any such challenge to the pleadings, followed by costly discovery, including depositions of the Parties and the exchange of electronically stored information discovery and other written discovery. Next, the Court would have had to resolve contested motions summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and creates risk that a litigation class would not be certified and/or that the Settlement

Class would recover nothing at all.  If Plaintiff prevailed through all of that, the Parties would still have to litigate the case at trial and possible appeals.

More specifically, Plaintiff is aware that Defendants would continue to assert a number of defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), including because: (i) Plaintiff fails to allege more than a "bare procedural violation" of the ACAL, (ii) Plaintiff's claims are barred by the voluntary payment doctrine; (iii) Plaintiff's allegations do not give rise to a viable claim for violation of ACAL § 25.07(4); and (iv) Defendants' processing fees are permitted under ACAL § 25.29.  Fraietta Decl. ¶ 18. Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and Defendant would likely take the position that Plaintiff is not entitled to bring her claims on a class wide basis.  *Id.*  Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial.  *Id.*  Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision.  *Id.*  Victory for the Defendant at any one of those steps would deprive putative class members of any relief.  No matter what the outcome, absent settlement, this case would likely expend court resources for years.  And given that ACAL § 25.07(4) was recently enacted, there is no binding authority on these issues.  *Id.*

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  Consequently, this *Grinnell* factor plainly weighs in favor of final approval of the Settlement.

## 2.    The Reaction Of The Class (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement."  *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 24 ¶¶ 12-14), and direct notice reached over 96% of the Settlement Class. *See* Fraietta Decl. ¶ 24; Epiq Decl. ¶ 12; *see also id*. ¶¶ 7 and 10. As of July 29, 2024, thousands of Class Members have filed claims, <u>zero</u> objected to the Settlement, and only seven opted-out. *See* Epiq Decl. ¶¶ 18-19. This exceptional participation rate and lack of objections from the Settlement Class leaves no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011 at 1027 (9th Cir. June 9, 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret

out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176. Prior to reaching the Settlement, the Parties conducted informal discovery including on issues such as the size and scope of the putative class, specifically the amount of processing fees Defendants collected during the relevant time period. Fraietta Decl. ¶ 6. The Parties also discussed and debated the key facts, legal issues, litigation risks, and potential settlement structures. *See id.* This information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions. *Id* ¶ 7.

Further, Class Counsel's experience in class action matters, as well as the other efforts made by counsel on both sides, confirms that the Parties are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. This *Grinnell* factor thus also weighs in favor of final approval.

### 4. Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*.

Although Plaintiff's case is strong, it is not without risk. Defendants have made it clear that, if the litigation continues, they will file a Motion to Dismiss, move for summary judgment on various issues, and vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the

likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177. The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present. The Court has not yet certified the Settlement Class for litigation purposes and the Parties anticipate that such a determination would be reached only after Defendants' motion to dismiss is briefed and decided, discovery is completed, and exhaustive class certification briefing is filed. Defendants would likely argue that individual questions preclude class certification. Defendants would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendants would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed Settlement eliminates this risk, expense, and delay as well. Consequently, these *Grinnel* factors weigh in favor of final approval of the Settlement.

> **5.  Defendants' Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)**

While Defendants could likely withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Thus, this factor is neutral.

> **6.  The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the

use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the non-reversionary cash Settlement Fund exceeds the total amount of allegedly unlawful fees collected by Defendants, and each Settlement Class Members who submits a simple Claim Form will receive a *pro rata* cash payment as a percentage of the total amount of processing fees he or she paid to Defendants during the class period, following the deduction of notice and claims administration costs, attorneys' fees and expenses, and the class representative service award, all of which will be paid by Defendants. Settlement ¶ 1.40; 2.1(b). In addition, Defendants represent that they no longer charge processing fees for electronic tickets to their Places of Entertainment and as part of the Settlement agree not to reinstate the processing fee that was the subject of this litigation unless: (i) they clearly and conspicuously disclose the total cost of the tickets, inclusive of all processing fees, prior to the ticket being selected for purchase; or (ii) ACAL § 25.07(4) is amended, repealed, or otherwise invalidated, thereby remedying the conduct that is the subject of case. *Id.* ¶ 2.2. Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is

more than reasonable.  Moreover, when a settlement assures immediate payment of substantial amounts to class members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" it is reasonable under this factor.  *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).  Thus, these *Grinnell* factors also weigh in favor of final approval

## B. The Rule 23(e)(2) Factors

### 1. The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019).  Here, "plaintiff's interests are aligned with other class members' interests because [she] suffered the same injuries:" paying an allegedly unlawful processing fee to Defendants due to their alleged failure to properly disclose the fee.  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiff[] ha[s] an interest in vigorously pursuing the claims of the class."  *Id.*  Further, numerous other courts in this Circuit have previously found that Class Counsel adequately meet the obligations and responsibilities of Class Counsel.  *See* Fraietta Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.  This factor thus favors final approval.

### 2. The Settlement Was Negotiated At Arm's Length

Class Counsel and counsel for Defendants are experienced in class action litigation and engaged in protracted settlement discussions with the benefit of all necessary information to

make an informed and intelligent evaluation of the strengths and weaknesses of the case. Accordingly, this Rule 23(e)(2) factor has been met.

### 3. The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial. *In re Payment Card Interchange*, 330 F.R.D. at 36. As noted above, the Settlement has met each of these *Grinnell* factors. *Supra* §§ I.A(1)-(7). As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement. Fraietta Decl. ¶ 21.

As to "the effectiveness of any proposed method of distributing relief to the class," "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange*, 330 F.R.D. at 40. Here, under the terms of the Settlement, Settlement Class Members who submit a timely Claim Form will receive a *pro rata* portion of the Settlement Fund, as a percentage of the total amount of processing fees he or she paid to Defendants during the class period, following the deduction of notice and claims administration costs, attorneys' fees and expenses, and the class representative service award, all of which will be paid by Defendants. Settlement ¶ 2.1(b). This

plan was proposed by experienced and competent counsel with the assistance of an experienced Settlement Administrator and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds*, 414 F. Supp. 3d at 695.

As to "the terms of any proposed award of attorney's fees," Class Counsel has applied for attorneys' fees, costs, and expenses "not to exceed one-third" of the Settlement Fund, which amounts to no more than $366,666.67. Settlement ¶ 8.1; ECF No. 25. Since the Class Counsel's application is unopposed and is a reasonable request, as courts in this Circuit routinely approve fee requests in the amount of one-third of a common fund. *See, e.g.*, *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding 33% of $7.7 million settlement fund). As courts in this Circuit have noted, fee requests for up to one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011).

### 4.   The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange*, 330 F.R.D. at 47. Here, the Settlement distributes cash relief

on a *pro rata* basis as a percentage of the total amount of processing fees he or she paid to Defendants during the class period, which has been found by courts in this Circuit to be equitable. *See id.*; *see also, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"). Thus, this Rule 23(e)(2) factor is weighs in favor of approval.[4]

* * *

Because the Settlement is, on its face, "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## II. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise

---

[4] Additionally, the Second Circuit has found that "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Moses*, 79 F.4th at 245 (quoting Fed. R. Civ. P. 23(e)(2)(D)) ("[T]he equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation … [while] [a]t the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative …."). Here, the requested $5,000 service award comprises a mere 0.45% of the $1,100,000 Settlement Fund and will have a *de minimis* impact on class member recovery. Additionally, other courts in this Circuit have found that $5,000 service awards are appropriate in unlawful fee cases. *See Russett v. The Northwestern Mutual Life Ins. Co.*, Case No. 19-cv-07414-KMK, ECF No. 51 at ¶ 15 (S.D.N.Y. Oct. 6, 2020) (approving $5,000 service awards in case alleging unlawful fees under New York General Business Law § 399-zzz); *Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST, ECF No. 35 at ¶ 15 (E.D.N.Y. May 20, 2021) (same).

interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it provided direct notice to over 96% of the Settlement Class. *See* Epiq Decl. ¶ 11.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 24 ¶ 12. The Plan has now been fully carried out by professional settlement administrator Epiq. Pursuant to the Settlement, Defendant provided Epiq with a list of 182,182 available names, email addresses, and Out-of-Pocket Fee amounts. *See* Epiq Decl. ¶ 6. After Epiq removed duplicates, the Class List contained 176,062 potential members. *See id.* ¶ 7. Epiq successfully delivered the Court-approved notice via email to 169,508 class members. *See id.* ¶ 10. Accordingly, the Court-

approved notice successfully reached 96.27% of the Settlement Class directly as of July 29, 2024. *See id.* ¶ 10.[5] These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions. *See id.* ¶ 18; Ex. C. Moreover, Epiq will send two reminder notices both 30 days and 7 days prior to the Claims Deadline to all Settlement Class Members who have yet to file a claim at that time. Agreement ¶ 4.1(c). Given the broad reach of the notice, and the detailed information provided, the requirements of due process and Rule 23 are easily met.

## III. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

At the preliminary approval stage, the Court certified the following Settlement Class for settlement purposes:

> [A]ll individuals who: (i) purchased electronic tickets to Defendants' Top of the Rock, the Rink, and/or Rockefeller Center Tours from Defendants' website, https:www.rockefellercenter.com/, from August 29, 2022 through and including January 31, 2024; and (ii) paid a processing fee in connection with such purchase.

ECF No. 24 ¶ 9. The Court's preliminary approval order also appointed Philip L. Fraietta and Stefan Bogdanovich of Bursor & Fisher, P.A. as Class Counsel and Plaintiff Natalie Norcross as Class Representative, both for settlement purposes. *Id.* ¶ 8.

In doing so, the Court set forth an extensive analysis of the propriety of certification under Rules 23(a) and 23(b)(3), following the argument presented in the preliminary approval motion. *Id.* ¶ 10. This Court was correct in certifying the Class for settlement purposes pursuant

---

[5] Defendants, through Epiq, also notified the appropriate state and federal officials pursuant to CAFA. *See* Epiq Decl. ¶ 5.

to Rules 23(a) and 23(b)(3), and nothing has changed to alter the propriety of the Court's certification. The Court should now grant final certification of the Settlement Class.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated: August 2, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:   */s/ Philip L. Fraietta*
          Philip L. Fraietta

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com


Stefan Bogdanovich (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Class Counsel*